FILED
JAN 0 8 2007
JAN 8, 2007
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

ORIGINAL

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| MIDWEST CANVAS CORP., an Illinois corporation, | )<br>)<br>) |
| Plaintiff, | ) Case No.<br>) |
| v. | ) 07CV85<br>) JUDGE GOTTSCHALL<br>) MAGISTRATE JUDGE SCHENKIER |
| COMMONWEALTH CANVAS, INC., a Massachusetts corporation, | )<br>) |
| Defendant. | )<br>) |

## COMPLAINT FOR FOR INJUNCTIVE AND OTHER RELIEF

Plaintiff, MIDWEST CANVAS CORP., an Illinois corporation, by and through its attorneys, KANTOR & APTER, LTD. and ROSENBAUM & ASSOCIATES, P.C., for its Complaint For Injunctive and Other Relief, against Defendant COMMONWEALTH CANVAS, INC., a Massachusetts corporation, states as follows:

### *The Parties, Jurisdiction and Venue*

1. Plaintiff MIDWEST CANVAS CORP. ("MIDWEST") is an Illinois corporation which maintains its principal place of business in Illinois and is engaged in the manufacture, distribution and sale, among other things, of concrete curing blankets, woven polyethylene tarpaulins and other products used in the construction field.

2. Defendant COMMONWEALTH CANVAS, INC. ("COMMONWEALTH"), is a Massachusetts corporation which maintains its principal place of business in Danvers, Massachusetts. At times relevant hereto, COMMONWEALTH has been engaged in the business

of the manufacture, distribution and sale, among other things, of concrete curing blankets, tarpaulins and other products used in the construction field.

3. This Court's subject matter jurisdiction over all federal claims arises pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1338(a) and (b).

4. This Court also has supplemental jurisdiction of all pendant state claims pursuant to 28 U.S.C. § 1367(a).

5. This Court has personal jurisdiction over COMMONWEALTH by virtue of 735 ILCS 5/2-209(a)-(c), among other bases, in that Defendant has transacted business in the State of Illinois, engaged in tortuous acts within the State of Illinois and/or has contacts with the State of Illinois commensurate with the United States Constitution and the Illinois Constitution, so as to submit itself to the jurisdiction and process of this Court.

6. Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b) and (c).

7. Upon information and belief, COMMONWEALTH has on a continual basis committed the acts alleged below within the Northern District of Illinois, in business interactions purposefully elicited by Defendant with or directed to residents of this District, including, *inter alia*, falsely misrepresenting the qualities of its products and other acts in violation of the Lanham Act, 15 U.S.C. § 1125(a), and other acts, which harm MIDWEST.

### *Count I—Violation of Lanham Act, 15 U.S.C. § 1125(a), Request for Injunctive Relief*

8. Both Plaintiff MIDWEST and Defendant COMMONWEALTH sell concrete curing blankets to distributors throughout the United States such as contractor supply houses and lumber yards, who sell the blankets from their retail locations to end users such as contractors.

9. The insulating value or thermal resistance of concrete curing blankets is referred

2

to as an R-value and, simply stated, the higher the R-value, the greater the insulating capability of the blanket.

10. Plaintiff MIDWEST since approximately 1996 has advertised and promoted R-values of its concrete curing blankets as determined by independent testing laboratories. Plaintiff's advertisements and test reports, among other things, describe the products tested; specify that ASTM C-518 was utilized as a procedural guide; identify the individuals and entities that performed the testing; and identify materials and components with insulating capability which affect or increase R-value measurements.

11. Beginning in or about the fall of 2006, Defendant COMMONWEALTH began to promote and advertise to distributors an R-value for Defendant's concrete curing blankets.

12. Defendant advertises, and has advertised since approximately the fall of 2006, its concrete curing blankets through the use of the advertisement attached hereto as *Exhibit A*. Defendant COMMONWEALTH states in the advertisement that its two-layer concrete curing blanket has an R-value of 3.286 and that its three-layer concrete curing blanket has an R-value of 4.285. Defendant's advertisement contains no information as to the R-value testing performed by Defendant to achieve these R-values.

13. Plaintiff MIDWEST first learned of Defendant's promotion and advertisement in or about early December, 2006. On December 15, 2006, Plaintiff demanded in writing, among other things, that Defendant supply documentation corroborating the advertised R-values. A true and correct copy of Plaintiff's December 15, 2006 demand letter is attached hereto as *Exhibit B*. Plaintiff received no response whatsoever from Defendant COMMONWEALTH to the December 15, 2006 demand letter.

14. Upon information and belief, the R-value of Defendant's two-layer concrete curing blanket is not 3.286 and the R-value of Defendant's three-layer concrete curing blanket is not 4.285, as advertised by Defendant.

15. Upon information and belief, the R-values advertised by Defendant COMMONWEALTH for its products can only be achieved by creating an R-value test that incorporates materials or components in addition to Defendant's concrete curing blanket to increase the R-value measurement. Defendant's advertisement fails to disclose the use of any such material or component in the R-value testing of Defendant's products.

16. Upon information and belief, Defendant COMMONWEALTH has no test report and/or performed no R-value testing of its products which substantiate the R-values as advertised by Defendant.

17. Defendant COMMONWEALTH's advertisement is false and/or misleading and likely to cause confusion or mistake. Defendant's advertisement has misled, or has a tendency to mislead, customers and/or potential customers into acquiring COMMONWEALTH's products.

18. Defendant COMMONWEALTH's advertising is false in that it misrepresents the nature, characteristics, quality and/or attributes of Defendant's products. Such advertising has a tendency to deceive customers and potential customers; and is damaging to Plaintiff's reputation.

19. Defendant COMMONWEALTH's advertisement was deliberately designed to mislead customers.

20. Defendant COMMONWEALTH's deceptive statements are material in that they are likely to influence the purchasing decisions of customers.

4

### *Count II—Violation of Lanham Act, 15 U.S.C. § 1125(a), Action for Damages*

1.-20. Plaintiff MIDWEST repeats and re-alleges the allegations of paragraph 1 through paragraph 20 of Count I as though fully set forth herein.

21. Defendant COMMONWEALTH's commercial advertising and promotional statements to prospective purchasers of concrete curing blankets constitute the dissemination of false and/or misleading representations of fact which misrepresent the nature, characteristics and/or qualities of COMMONWEALTH's products.

22. Defendant COMMONWEALTH's misrepresentations in commercial advertising and promotion were made in commerce, and were disseminated to customers of MIDWEST and end users of MIDWEST's products, who, upon information and belief, were actually deceived or tended to be deceived by said misrepresentations.

23. Defendant COMMONWEALTH's misrepresentations were intended by Defendant to influence, and likely succeeded in influencing, the purchasing decisions of the persons to whom such misrepresentations were disseminated.

24. Defendant COMMONWEALTH's misrepresentations have and will injure Plaintiff MIDWEST by causing MIDWEST to lose customers and sales, resulting in business losses in an amount to be proven at trial.

### *Count III—Violation of Uniform Deceptive Trade Practices Act, 815 ILCS 510/1 et seq.*

1.-24. Plaintiff MIDWEST repeats and re-alleges the allegations of paragraph 1 through paragraph 24 as though fully set forth herein.

25. Defendant COMMONWEALTH's advertisement constitutes a deceptive trade practice as described in the Uniform Deceptive Trade Practices Act, 815 ILCS 510/1 *et seq.*

26. Defendant COMMONWEALTH's misleading advertisements are likely to cause confusion, deception and mistake, have caused irreparable and immediate injury to MIDWEST, for which MIDWEST has no adequate remedy at law.

27. Defendant COMMONWEALTH's violative conduct was undertaken intentionally, willfully and with wanton disregard of MIDWEST's rights.

### *Count IV—Common Law Unfair Competition*

1.-27. Plaintiff MIDWEST repeats and re-alleges the allegations of paragraph 1 through paragraph 27 as though fully set forth herein.

28. By committing the acts alleged herein, Defendant COMMONWEALTH is guilty of unfair competition, deceptive advertising and unfair trade practices, all in violation of Illinois common law unfair competition.

29. Defendant COMMONWEALTH's acts and unfair competition are likely to cause confusion, deception and mistake, and have caused, and will continue to cause, irreparable and immediate injury to MIDWEST, for which it has no adequate remedy at law.

30. Plaintiff MIDWEST has suffered damages as a result of Defendant's acts of unfair competition.

31. Defendant COMMONWEALTH's acts of unfair competition are willful and in wanton disregard of MIDWEST's rights.

### *Prayer for Relief Common to All Counts*

**WHEREFORE,** Plaintiff MIDWEST CANVAS CORP. prays for the following relief:

A. That, as to Counts I, III and IV, Defendant COMMONWEALTH CANVAS, INC., its agents, servants, employees and attorneys and all those persons who act in concert or

6

participation with Defendant, be temporarily and, thereafter, permanently enjoined and restrained from:

>  i. disseminating the advertising literature attached hereto as *Exhibit A*; and
>
> ii. disseminating any false or misleading statements or advertisements pertaining to the R-values of Defendant's concrete curing blankets.

B. That, as to Counts II and IV, MIDWEST recover its damages resulting from the Defendant's false advertising including, but not limited to, lost sales and damage to goodwill and reputation, in an amount to be determined at trial, but in excess of $500,000.

C. That, as to Count II, Defendant COMMONWEALTH be required, in accordance with 15 U.S.C. § 1117, to account for and pay over to MIDWEST all gross profits derived by Defendant from its aforesaid acts.

D. That, as to Counts I and II, this Court find this an exceptional case pursuant to 15 U.S.C. § 1117(a) and award MIDWEST enhanced damages, up to three times the amount determined at trial based on Defendant's unlawful actions.

E. That, as to Counts I and II, MIDWEST be awarded its reasonable attorneys' fees and costs of suit under 15 U.S.C. § 1117(a) and any other relief that the Court deems just and proper.

F. That, as to Counts I and II, Defendant COMMONWEALTH be required, in accordance with 15 U.S.C. § 1116 to file with this Court and serve on MIDWEST a report, in writing, under oath, setting forth in detail the manner and form in which the Defendant has complied with the terms of any injunction entered in this action.

G. That, as to Counts I and II, the Defendant COMMONWEALTH be ordered pursuant to 15 U.S.C. § 1118 to deliver to this Court or MIDWEST for destruction all packaging, literature, and advertising of a false, misleading or unfair nature in Defendant's possession or control.

H. That, as to Counts I through IV, Defendant COMMONWEALTH be required to place corrective advertising and take other affirmative actions to inform and educate the public and the trade as to the true R-value of Defendant's products.

I. That MIDWEST be awarded punitive damages of not less than $500,000.

J. That MIDWEST be awarded prejudgment interest.

K. That MIDWEST be awarded such further and other relief as this Court deems just and necessary.

MIDWEST CANVAS CORP., an Illinois corporation
Plaintiff

By: _____
Jennifer Ann Esposito
One of its attorneys

Jennifer Ann Esposito
Agata P. Karpowicz
KANTOR & APTER, LTD.
650 Dundee Road
Suite 160
Northbrook, Illinois 60062
(847) 272-8850


David G. Rosenbaum
Rosenbaum & Associates, P.C.
650 Dundee Road
Suite 380
Northbrook, Illinois 60062
(847) 770-6000

8

## VERIFICATION

I, Gary Handwerker, the undersigned, certify and declare as follows:

I have read the foregoing Complaint for Injunctive and Other Relief and know its contents. I certify that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that he verily believes the same to be true. I am Vice-President of plaintiff Midwest Canvas Corp. and am authorized to make this verification for or on its behalf.

MIDWEST CANVAS CORP., an Illinois corporation

_____
Gary Handwerker, its Vice-President

*List of Exhibits*

*Exhibit A*—Defendant's Advertisement and Price List

*Exhibit B*—Plaintiff's December 15, 2006 Demand Letter

*Exhibit A*



# Commonwealth
## CANVAS

### Price sheet for KS, IA, MO, NE, IL

|      | (6')     | (12')    |
|------|----------|----------|
| CC-2 | $31.00   | $63.00   |
| CC-3 | $38.00   | $77.00   |

R value on 2 layer = 3.286
R value on 3 layer = 4.285

Standard size is 6'x25'   truckload of 2 layer is 800 +/-
                          truckload of 3 layer is 650 +/-

Custom size is 12'x25'    truckload of 2 layer is 400 +/-
                          truckload of 3 layer is 325 +/-

Pricing is based on full truck load quantities which are delivered prices.

Terms are 1%10 net 30 FIRM

Any other questions please call me. Thank you.

Christine

4 Electronics Avenue, Danvers, MA 01923 • Tel. 978.646.9400 • fax 978.646.9500 • Commonwealthcanvas.com

*Exhibit B*

# ══════Kantor & Apter, Ltd.══════
### ATTORNEYS

**MYRON KANTOR**
**JENNIFER ANN ESPOSITO**

DAVID APTER – Of Counsel

DOROTHY B. LESAK
AGATA P. KARPOWICZ

December 15, 2006

Mr. Peter Bontos
President
Commonwealth Canvas, Inc.
4 Electronics Avenue
Danvers, Massachusetts 01923

Dear Mr. Bontos:

    Our firm represents Midwest Canvas Corp. of Chicago Illinois. As you may know, Midwest Canvas Corp. is a leading manufacturer of concrete curing and insulating blankets with sales and distribution throughout the United States. It has come to our attention that Commonwealth Canvas is manufacturing certain thermal covers for use as concrete curing covers and advertising and distributing these products in Illinois and elsewhere in competition with our client.

    Your company's Price Sheet specific to Kansas, Iowa, Missouri, Nebraska and Illinois and your company's promotional literature entitled "Cure-All" Concrete Curing Blankets have been distributed in Illinois and elsewhere. Your Price Sheet specifies that your two-layer blanket has an R-value of 3.286 and that your three-layer blanket has an R-value of 4.285. We have been advised that your company refused to supply test results supporting your claimed R-value when requested by our client and that your office subsequently admitted it has no test reports. If, indeed, your Company has no test reports to substantiate its advertised R-value claims, your promotional literature is facially false and misleading and is likely to cause consumer confusion in violation of the United States Lanham Act 15 U.S.C Sec. 1125(a).

    We hereby demand that within the next seven (7) calendar days, Commonwealth Canvas, Inc.: (a) supply us documentation corroborating the R-values claimed in your promotional literature for your two-layer and three-layer blankets including, without limitation, R-value testing performed by or on behalf of your company identifying, with specificity, your two-layer and three-layer blanket composition and thickness; (b) retract all promotional material referencing unsubstantiated R-value testing and voluntarily disseminate corrective advertisements; (c) cease and desist from reference to unsubstantiated R-values in all advertisement and promotional material and customer contact; and (d) eliminate each and every false and misleading claim from all Commonwealth Canvas promotional literature.

Very truly yours,

Jennifer Ann Esposito

JAE/so
cc: Midwest Canvas Corp.

SUITE 160 • 650 DUNDEE ROAD • NORTHBROOK, ILLINOIS 60062
(847) 272-8850 • FAX (847) 272-9235

From: Origin ID: (847)272-8850
Sandy Ostman
KANTOR & APTER, LTD
650 DUNDEE ROAD
SUITE 160
NORTHBROOK, IL 60062



Ship Date: 15DEC06
ActWgt: 1 LB
System#: 1658377/INET2500
Account#: S *********

REF: Midwest

Delivery Address Bar Code

SHIP TO: (877)922-6827　　BILL SENDER
**Peter Bontos**
**Commonwealth Canvas, Inc.**
**4 Electronics Avenue**

**Danvers, MA 01923**



**PRIORITY OVERNIGHT**　　　　　　**MON**
Deliver By:
TRK# **7922 5786 8437**　FORM 0201　18DEC06

**BOS**　A1

01923　-MA-US

**NE GDMA**



Shipping Label: Your shipment is complete
1. Use the 'Print' feature from your browser to send this page to your laser or inkjet printer.
2. Fold the printed page along the horizontal line.
3. Place label in shipping pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.

**Warning: Use only the printed original label for shipping. Using a photocopy of this label for shipping purposes is fraudulent and could result in additional billing charges, along with the cancellation of your FedEx account number.**

Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com. FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery, misdelivery, or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim. Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental, consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss. Maximum for items of extraordinary value is $500, e.g. jewelry, precious metals, negotiable instruments and other items listed in our Service Guide. Written claims must be filed within strict time limits, see current FedEx Service Guide.